566 A.2d 296

**COMMONWEALTH of Pennsylvania**

v.

**Daniel MARSH, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 14, 1989.

Filed Nov. 16, 1989.

612

J. Michael Farrell, Philadelphia, for appellant.

Helen Kane, Asst. Dist. Atty., Philadelphia, for Com.

Before OLSZEWSKI, DEL SOLE and JOHNSON, JJ.

OLSZEWSKI, Judge:

This is an appeal from a judgment of sentence imposing life imprisonment for felony murder with a concurrent term of two and one-half years for assault. Appellant, Daniel Marsh, raises seven issues for our review. Finding no merit in his contentions, we affirm the judgment of sentence.

On March 26, 1984, appellant and four cohorts, guns drawn, kicked in the door of an illegal lottery operating at 2820 West Lehigh Avenue in Philadelphia. Four of the men entered, while a fifth positioned himself outside as a lookout. The men inside demanded money and ordered everyone inside to get down. When gunfire erupted, Ms. Carrie Morton was shot by appellant and killed as she stood in front of the booth, attempting to place her bets. Gloria Smith, another customer, suffered a gunshot wound in the wrist.

Carl Cooper, who had been working in the establishment as a doorman and had recognized some of perpetrators from a previous robbery, ran out the door when the shooting began. Cooper watched the perpetrators flee and ran for help. Police obtained descriptions of the perpetrators from Cooper and others present at the scene and learned that the premises had been robbed at gunpoint on two occasions within a two-week period prior to the murder. Cooper assisted police in preparing a composite sketch of

appellant and informed them that the perpetrators frequented Storey's Bar. On March 29, 1984, police transported Cooper to Storey's, where he identified appellant. On May 23, 1984, Cooper also identified appellant at a line-up.

Appellant was arrested on March 29, 1984, and charged with second-degree murder, conspiracy, possessing an instrument of crime, aggravated assault, and robbery. A motion to sever was denied on November 19, 1984. On December 4, 1984, the trial court granted appellant's motion to suppress an enlarged photo album but denied suppression of other forms of identification. On February 7, 1985, following a jury trial, appellant was found guilty as charged. Post-verdict motions were filed and denied; and on March 24, 1987, appellant was sentenced to life in prison for second-degree murder with a concurrent sentence of two and one-half to five years for aggravated assault.[1] Appellant filed a petition to modify his sentence *nunc pro tunc*, which was denied on April 23, 1987. This appeal followed.

Appellant first contends that the trial court erred in denying his severance motion. Specifically, appellant asserts that he was prejudiced by the testimony of co-defendant Wiggins, "which resulted in the introduction of the statement which [Wiggins] gave to the police wherein he named the co-defendants...." Appellant's brief at 9. In this regard, our Rules of Criminal Procedure provide:

> Defendants charged in separate indictments or informations may be tried together if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.

Pa.R.Crim.P. 1127(A)(2). It is well settled that the decision whether to sever trials is within the discretion of the trial court and will not be disturbed on appeal absent a manifest abuse of discretion. *Commonwealth v. Hess*, 378 Pa.Super.

---

1. Sentence was suspended on both the conspiracy and possessing an instrument of crime counts. Sentence for the robbery conviction was deemed merged with the murder sentence.

221, 238, 548 A.2d 582, 591 (1988), citing *Commonwealth v. Morales*, 508 Pa. 51, 494 A.2d 367 (1985). "A joint trial of co-defendants is 'advisable when the crimes charged grew out of the same acts and much of the same evidence is necessary or applicable to [all] defendants.'" *Commonwealth v. Thomas*, 346 Pa.Super. 11, 19, 498 A.2d 1345, 1349 (1985), *citing Morales*, 508 Pa. at 61, 494 A.2d at 372. When a conspiracy is charged, defendants should be tried together unless some actual prejudice is shown. *Commonwealth v. Orlowski*, 332 Pa.Super. 600, 481 A.2d 952 (1984). A defendant must show real potential for prejudice and not mere speculation. *Commonwealth v. Doa*, 381 Pa.Super. 181, 205, 553 A.2d 416, 428 (1989), *citing Commonwealth v. Patterson*, 519 Pa. 190, 195, 546 A.2d 596, 599 (1988).

In the instant case, the record reflects that the charges against all defendants were identical and arose from the same incident. Indeed, many of the same witnesses would testify and the evidence was essentially the same for each of them. Therefore, "[s]everance would have resulted in unnecessary repetition." *Commonwealth v. Council*, 355 Pa.Super. 442, 447, 513 A.2d 1003, 1006 (1986).

Moreover, appellant's claim that he was prejudiced by co-defendant Wiggins' statement to police is refuted by the record, for Wiggins' statement was admitted in redacted form, eliminating the identification of Wiggins' two co-conspirators. This Court has held that it is improper to find a co-defendant prejudiced by the admission of another co-defendant's redacted statement if the statement does not tend to identify the co-defendant as a participant in the crime. *Hess*, 378 Pa.Super. at 238, 548 A.2d at 591, *citing Commonwealth v. Rawls*, 276 Pa.Super. 89, 419 A.2d 109 (1980); *see also Council*, 355 Pa.Super. at 449, 513 A.2d at 1007. "The interests of judicial economy commend redaction over severance in a joint trial of co-conspirators." *Hess*, 378 Pa.Super. at 240, 548 A.2d at 592. We find no abuse of discretion on the part of the trial court in denying appellant's severance motion.

Next, appellant contends that the trial court erred in denying appellant's motion to suppress Cooper's identification of appellant in the line-up and his in-court identification because they were tainted by the photo identification that the trial court suppressed. On March 30, 1984, Cooper was shown color photos of appellant taken from photo albums seized, pursuant to a warrant from an automobile in which two co-defendants were arrested. The trial court ruled that the photo identification was inadmissible on the grounds that: (1) appellant was under arrest at the time of the viewing and was denied his right to counsel; and (2) it was unduly suggestive because Cooper knew that the photo album had been seized from the automobile that Cooper had previously described to law enforcement officials.

In this regard, our Supreme Court has determined that "an in-court identification following an illegal out of court identification is admissible into evidence if, considering the totality of the circumstances, it is determined that the in-court identification had an independent origin 'sufficiently distinguishable to be purged of the primary taint.'" *Commonwealth v. Buehl,* 510 Pa. 363, 385, 508 A.2d 1167, 1178 (1986), *quoting Commonwealth v. Ransome,* 485 Pa. 490, 497, 402 A.2d 1379, 1383 (1979). Factors making the in-court identification reliable are as follows:

> (1) the manner in which the pretrial identification was conducted; (2) the witness' prior opportunity to observe the alleged criminal act; (3) the existence of any discrepancies between the defendant's actual description and any description given by the witness before the [out-of-court] identification; (4) any previous identification by the witness or some other person; (5) any previous identification of the defendant himself; (6) failure to identify the defendant on a prior occasion; and (7) the lapse of time between the alleged act and the out-of-court identification.

*Commonwealth v. Laurenson,* 323 Pa.Super. 46, 59, 470 A.2d 122, 128 (1983), *quoting Commonwealth v. Slaughter,* 482 Pa. 538, 546, 394 A.2d 453, 457 (1978).

■ The record reflects that at the time of the robbery, Cooper recognized appellant from appellant's participation in another robbery of the lottery a week before and from having seen him the night before at Dooley's Parlor. Transcript at 1670. Moreover, Cooper testified that he observed appellant crash through the door of the lottery building and observed him standing in the middle of a well-lit room prior to the murder. Four days later, Cooper selected appellant from a crowd of people inside Storey's Bar. Indeed, Cooper never failed to identify appellant. Therefore, there is no reason to believe that the suppressed identification in any manner tainted the line-up or in-court identifications. We are satisfied that these identifications had independent origin and, accordingly, affirm the determination of the trial court.

Appellant also asserts that the trial court violated appellant's constitutional privilege against self-incrimination by inquiring of appellant's trial counsel as to whether appellant was going to testify regarding appellant's shaving habits.[2] The record reflects that when appellant's counsel cross-examined Cooper, the following dialogue ensued:

[Attorney for appellant]: Can you see, by the way, if Mr. Marsh has a mustache from where you're sitting?

[Cooper]: It's very thin if he got one.

[Attorney for appellant]: If has one at all, it's very thin?

[Cooper]: Yes.

[Attorney for appellant]: Okay.... Can you see whether or not Mr. Marsh has been shaven from where you sit? If he has ever shaven in his life?

[The Commonwealth]: Objection, Your Honor.

The Court: Objection sustained.

---

**2.** The Commonwealth urges that this issue has been waived because appellant, in supplemental post-trial motions filed by new counsel, has not alleged that trial counsel was ineffective for failing to raise the issue in the originally filed post-verdict motions. The Commonwealth, however, has offered no support for its position and, indeed, we find none.

[Attorney for appellant]: Would the Court permit me to have Mr. Marsh stand in front of the jury box so they can see whether or not he has ever shaven?

The Court: At the present time?

[Attorney for appellant]: Yes, in his life, yes.

The Court: How can he assume that? Where does that testimony come from?

[Attorney for appellant]: It would come from—

The Court: Is he going to take the stand and testify to that?

[Attorney for appellant]: No.

Transcript at 2070–2071.

It is well settled that reference to an accused's post-arrest silence is a violation of his constitutional right against self-incrimination. *Commonwealth v. Melvin*, 378 Pa.Super. 59, 63, 548 A.2d 275, 277 (1988), *citing Commonwealth v. Mays*, 361 Pa.Super. 554, 523 A.2d 357 (1987); *Commonwealth v. Gbur*, 327 Pa.Super. 18, 474 A.2d 1151 (1984). Cautionary instructions, however, may rectify what otherwise might be reversible error. *Commonwealth v. Robinson*, 379 Pa.Super. 575, 576, 550 A.2d 800, 801 (1988), *citing Gbur, supra*. The courts of this Commonwealth use a four-factor test to determine whether cautionary instructions can cure such an error: "1) the nature of the reference to the defendant's silence; 2) how it was elicited; 3) whether the district attorney exploited it; and 4) the promptness and adequacy of the cautionary instruction." *Gbur*, 327 Pa.Super. at 24, 474 A.2d at 1154. Using this test, we find that any prejudice that may have resulted from the trial court's inquiry was adequately cured.

■ First, we note that the trial court's inquiry was not a comment on appellant's unwillingness to testify; rather, it was a question designed to ascertain the relevance and direction of defense counsel's inquiry and, therefore, not a direct implication of appellant's right against self-incrimination. In this event, the degree of prejudice was minimal. *Compare Mays, supra* (high degree of prejudice when

officer made direct reference to appellant's unwillingness to give a statement). Second, the reference to appellant's silence was a single inquiry as to whether appellant would testify—a fact that the jury would learn, in any event, at some point during the trial. Third, the Commonwealth was in no manner involved in the reference and supported the curative instruction. Fourth, the trial court rendered a competent curative instruction both shortly after the reference and during the jury charge. We conclude, therefore, that the actions of the trial court were appropriate to protect appellant's right to a "fair" trial, "remembering that the United States Constitution does not require a 'perfect' trial to effectuate one's rights under the law." *Robinson,* 379 Pa.Super. at 580, 550 A.2d at 803.

Next, appellant alleges that the trial court improperly admitted evidence of two prior gunpoint robberies of the lottery premises. It is well established that evidence of past crimes is inadmissible to prove that the defendant committed the crime with which he is presently charged. *Commonwealth v. Donahue,* 519 Pa. 532, 539, 549 A.2d 121, 125 (1988). Nonetheless, evidence of other crimes is admissible when:

"it tends to prove (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial—in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other. [Citation omitted.] When the evidence is relevant and important to one of these five issues, it is generally conceded that the prejudicial effect may be outweighed by the probative value. [Footnote omitted] [emphasis added.]," quoting *Commonwealth v. Peterson,* 453 Pa. 187, 197–8, 307 A.2d 264, 269 (1973).

*Commonwealth v. Clayton,* 516 Pa. 263, 276 n. 8, 532 A.2d 385, 392 n. 8 (1987), *quoting Commonwealth v. Rose,* 483 Pa. 382, 399–400, 396 A.2d 1221, 1230 (1979).

■ Instantly, we are satisfied that there is sufficient similarity between the crimes to justify the admission of evidence regarding each at trial for the purpose of showing a common scheme. Significantly, appellant proffered an alibi defense and challenged the reliability of Cooper's identification testimony. Evidence of the prior robberies, therefore, was probative, as it tends to rebut the alibi defense and buttress Cooper's testimony. Specifically, the Commonwealth's evidence established that within two weeks of the instant robbery, two other robberies occurred on the premises. The first occurred on the Tuesday two weeks prior to the instant offense, between 2:00 and 2:30 p.m. Two men knocked on the door, identified themselves as police officers, and were admitted by William West, who accepted bets on the premises. Once inside, co-defendant Kevin Coleman drew a gun and placed it at West's neck, demanding money. Cooper, who was outside the store, observed Coleman fleeing the scene after the robbery.

The second robbery occurred nine days later, on a Thursday at 2:30 p.m. Again, West responded to a knock at the door after which a man asked for "Jake," who was inside playing cards with Cooper. When West unlocked the door to permit the man access, two armed men rushed in behind the first man. They announced a holdup and ordered everyone to get to the floor. Appellant held a gun to West's head while co-defendant Madison went to the money box. West handed over the lottery proceeds and the robbers fled.

We find that the Commonwealth offered sufficient proof of common elements of the three offenses: (1) all of the offenses occurred within a two-week period; (2) all of the offenses took place at the same location; and (3) the perpetrators gained access in the same manner, drew guns, and robbed the premises at gunpoint. *See Commonwealth v. Gibbons,* 379 Pa.Super. 285, 293, 549 A.2d 1296, 1300 (1988).

There is, in other words, substantial evidence of prior criminal acts and of a similarity in the three cases. *Donahue, supra,* 519 Pa. at 543, 549 A.2d at 127. The trial court, therefore, did not abuse its discretion in allowing the admission of the evidence of other crimes. *Commonwealth v. Middleton,* 320 Pa.Super. 533, 549, 467 A.2d 841, 849 (1983), *citing Commonwealth v. Ulatoski,* 472 Pa. 53, 371 A.2d 186 (1977).

Next, appellant claims that the trial court invaded the province of the jury "by expressing its opinion on the ultimate issue of the Appellant's guilt by commenting to the jury that the evidence proved Appellant guilty of prior alleged robberies of 2820 West Lehigh Avenue." Appellant's brief at 22. The record reflects that appellant is challenging a limiting instruction provided by the trial court to advise the jury that it was restricted in its consideration of this prior crime evidence. The court's charge in this regard provided as follows:

> You have heard evidence tending to prove that the defendants, Kevin Coleman, Barry Coleman, James Madison and Daniel Marsh, were guilty of offenses for which they are not on trial. Now, I am speaking of the testimony to the effect that they were involved in prior robberies at 2820 West Lehigh Avenue. This evidence is before you for a very limited purpose, that is for the purpose of tending to prove identity by showing prior acquaintances or for the purpose of showing motive or a common scheme, plan or design. This evidence must not be considered by you in any other way than for the purpose just stated. You must not regard this evidence as showing that any of the defendants is a person of bad character or criminal tendencies from which you might be inclined to infer guilt. If you find the defendants guilty, it must be because you are convinced by the evidence that he committed the crimes charged and not because you believe he is wicked or has committed other offenses.

Transcript of 2/7/85, at 48–49.

■ Appellant's contention that the instruction was in error is meritless. Our Supreme Court, in *Commonwealth*

*v. Claypool,* 508 Pa. 198, 205, 495 A.2d 176, 179 (1985), declared that when evidence of prior criminal acts is admitted, "... such evidence must be accompanied by a cautionary instruction which fully and carefully explains to the jury the limited purpose for which that evidence has been admitted." *See also Commonwealth v. Billa,* 521 Pa. 168, 555 A.2d 835 (1989). Therefore, the trial court properly instructed the jury as delineated *supra.*[3]

■ Appellant also alleges prosecutorial misconduct on the part of the Commonwealth for charging appellant with the two prior robberies "for the sole purpose of gaining their use as evidence at the Appellant's trial for homicide." Appellant's brief at 23. Specifically, appellant asserts that "[t]he Commonwealth knew at the time of its presentation to the court that the only evidence [of the prior robberies] in its possession, the identifications of the defendant by West and Cooper, was so unreliable that it would be unable to obtain a conviction for those crimes." Appellant's brief at 24. Appellant's contention misapprehends the law concerning admission into evidence of a defendant's prior bad acts. Our Supreme Court has declared that the introduction into evidence of a crime other than the one charged does not depend upon a showing of a conviction of the prior crimes. *Commonwealth v. Smith,* 502 Pa. 600, 611, 467 A.2d 1120, 1125 (1983), *citing Commonwealth v. Galloway,* 495 Pa. 535, 434 A.2d 1220 (1981); *Commonwealth v. DeVaughn,* 488 Pa. 629, 413 A.2d 660 (1980). As discussed *supra,* the evidence of the prior robberies was properly admitted. The fact that the Commonwealth subsequently elected to dismiss the charges for the prior robberies is, therefore, of no consequence.

■ Further, this action on the part of the Commonwealth in no manner rises to the level of prosecutorial

---

3. Finding the instruction to be proper, we will not address appellant's assertion that trial counsel was ineffective for failing "to request a curative instruction on this point." Appellant's brief at 23. *See Commonwealth v. Buehl,* 510 Pa. 363, 384, 508 A.2d 1167, 1176 (1986), *citing Commonwealth v. Beasley,* 504 Pa. 485, 475 A.2d 730 (1984) (When jury instructions are adequate, counsel cannot be deemed ineffective for failing to request an adequate charge.).

misconduct. The United States Supreme Court has enunciated principally two types of prosecutorial misconduct: (1) the prosecutorial misconduct designed to provoke a mistrial; and (2) the prosecutorial misconduct undertaken in bad faith to prejudice or harass the defendant. *Commonwealth v. Starks*, 490 Pa. 336, 416 A.2d 498 (1980), *citing United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). The Commonwealth properly presented evidence of the prior bad acts; therefore, there has been no bad faith conduct designed to prejudice appellant. Moreover, the Commonwealth acted within its prerogative in dismissing the charges.[4]

 Finally, appellant asserts that trial counsel was ineffective for failing to procure appellant's alibi witness, Crystal Robinson. When addressing a claim of ineffectiveness, we first determine whether the issue underlying the charge of ineffectiveness is of arguable merit. *Commonwealth v. Davis*, 518 Pa. 77, 83, 541 A.2d 315, 318 (1988). If so, we must then determine whether the action or inaction of counsel had some reasonable basis designed to effectuate his client's interests. *Id.* Finally, appellant must also demonstrate that counsel's ineffectiveness prejudiced him such that the outcome at trial would have been different. *Commonwealth v. Pierce*, 515 Pa. 153, 158, 527 A.2d 973, 975 (1987).

In order to establish counsel's ineffectiveness for failing to call a particular witness, appellant has the burden of offering a positive demonstration or offering to prove at an appropriate hearing that this witness's testimony would actually have been helpful to the defense. *Commonwealth*

---

**4.** It is conceivable that the Commonwealth chose not to prosecute appellant on the other charges because appellant was sentenced to life imprisonment for the instant offense. While we cannot presume that the Commonwealth decided not to prosecute because of a lack of sufficient evidence, as appellant suggests, we note that in this circumstance, such reasoning would have been in compliance with our Rules of Professional Conduct, which provide:

RULE 3.8 SPECIAL RESPONSIBILITIES OF A PROSECUTOR
The prosecutor in a criminal case shall:
(a) refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause....

*v. Flis,* 369 Pa.Super. 275, 283, 535 A.2d 157, 160 (1987). In addition, appellant must prove that appellant informed counsel of the witness's existence. *Commonwealth v. Glessner,* 337 Pa.Super. 140, 146, 486 A.2d 521, 524 (1985). "The burden of proving counsel's ineffectiveness rests on the party alleging it." *Flis, supra, citing Commonwealth v. Wallace,* 347 Pa.Super. 248, 251, 500 A.2d 816, 818 (1985). Instantly, appellant has not proved that trial counsel was aware of Ms. Robinson's existence, nor has he in any manner established or offered to establish what Ms. Robinson would have testified to at trial. Accordingly, we cannot make a finding of ineffectiveness on the assumption that a witness's testimony would have affected the proceedings. *Flis, supra.*

Judgment of sentence affirmed.

DEL SOLE, J., concurs in the result.