J-A02015-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RONALD THOMAS | |
| Appellant | No. 1121 EDA 2013 |

Appeal from the Judgment of Sentence March 18, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0013001-2010

BEFORE:  PANELLA, J., LAZARUS, J., and WECHT, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED OCTOBER 02, 2015**

Ronald Thomas appeals from the judgment of sentence imposed in the Court of Common Pleas of Philadelphia County after a jury convicted him of first-degree murder[1] and possession of instruments of crime.[2]  Upon careful review, we vacate Thomas' judgment of sentence and remand for a new trial.

Thomas was convicted of shooting Anwar Ashmore twice in the chest at point blank range, allegedly in retaliation for Ashmore having stolen cocaine from him.  Two witnesses gave statements to the police indicating that they had seen Thomas shoot Ashmore.  However, intimidation by

_____

[1] 18 Pa.C.S.A. § 2502.

[2] 18 Pa.C.S.A. § 907.

Thomas, or individuals acting on his behalf, allegedly caused those witnesses to recant their previous statements at trial. Ultimately, however, a jury convicted Thomas of Ashmore's murder and he was sentenced to life imprisonment without the possibility of parole.

Thomas did not file post-sentence motions. On April 16, 2013, he filed a timely notice of appeal to this Court, in which he raises the following claims:[3]

1. Under the Sixth and Fourteenth Amendments of the U.S. Constitution as well as Article I, § 9 of the Pennsylvania Constitution, did the [t]rial [c]ourt err in admitting [Ashmore's] purported hearsay statement as evidence?

2. Under the Sixth, Thirteenth and Fourteenth Amendments of the U.S. Constitution as well as Article I, §§ 1 [and] 9 of the Pennsylvania Constitution, did the [t]rial [c]ourt err in permitting the prosecution to present [Thomas'] rap lyrics and rap-related visual images as inculpatory evidence?

3. Under the Sixth and Fourteenth Amendments of the U.S. Constitution as well as Article I, § 9 of the Pennsylvania Constitution, did the [t]rial [c]ourt err in denying [Thomas'] mistrial motion?

4. Under the Sixth and Fourteenth Amendments of the U.S. Constitution as well as Article I, § 9 of the Pennsylvania Constitution, did the [t]rial [c]ourt erroneously allow the prosecution to repeatedly present extensive evidence of purported witness intimidation?

5. Under the Sixth and Fourteenth Amendments of the U.S. Constitution as well as Article I, § 9 of the Pennsylvania Constitution, was the evidence insufficient to sustain [Thomas'] convictions?

---

[3] We have renumbered certain of Thomas' claims for ease of disposition.

Brief of Appellant, at 4.

Thomas first challenges the trial court's admission of Ashmore's purported statement to his brother, Hasan Ashmore ("Hasan"), that Ashmore had participated in a theft of cocaine from Thomas. Thomas claims that Ashmore's statement was both irrelevant and inadmissible because it was hearsay not subject to any exception.

We begin by noting that the admission of evidence is committed to the sound discretion of the trial court and our review is for an abuse of discretion. *Commonwealth v. Parker*, 104 A.3d 17, 21 (Pa. Super. 2014).

> In determining the admissibility of evidence, the trial court must decide whether the evidence is relevant and, if so, whether its probative value outweighs its prejudicial effect. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact. Evidence that merely advances an inference of a material fact may be admissible, even where the inference to be drawn stems only from human experience. Moreover, . . . to be relevant, evidence need not be conclusive.

*Commonwealth v. Hawk*, 709 A.2d 373, 376 (Pa. 1998) (internal citations and quotation marks omitted).

The Rules of Evidence provide as follows with regard to hearsay statements:

> "Hearsay" means a statement that[:]
>
> (1) the declarant does not make while testifying at the current trial or hearing; and
>
> (2) a party offers in evidence to prove the truth of the matter asserted in the statement.

Pa.R.E. 801.

Notwithstanding, the Rules also provide certain exceptions to the rule against hearsay, including a "state of mind" exception:

The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

* * *

A statement of the declarant's then-existing state of mind (such as motive, intent or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

Pa.R.E. 803(3).

Ashmore's brother, Hasan, testified that Ashmore showed him cocaine that Ashmore allegedly stole from Thomas' stash house. N.T. Trial, 3/11/13, at 15-17. Hasan also testified that he believed that the lyrics of Thomas' song, "Take It How You Wanna," were about Ashmore's theft of cocaine from Thomas. The lyrics included a threat by Thomas to kill the person responsible and, according to Hasan, referred to Ashmore. ***Id.*** at 21-22.

The Commonwealth argues that ***Commonwealth v. Fletcher***, 750 A.2d 261, 276 (Pa. 2000), controls. In ***Fletcher***, our Supreme Court held that the victim's statement to another individual that he had smoked all of the defendant's crack was relevant to establish the victim's state of mind regarding his relationship with the defendant and fell within the state of mind exception, as it established the presence of ill-will, malice, or motive for the killing. ***Id.*** at 293. More recently, however, the Supreme Court has

stated that "*Fletcher*'s broad approach to the admissibility of hearsay evidence touching on a victim's state of mind in a criminal homicide prosecution is in substantial tension with the limitations described and applied in the subsequent decisions of the Court." *Commonwealth v. Moore*, 937 A.2d 1062, 1071 (Pa. 2007).

In *Moore*, the appellant challenged the admission, under the state-of-mind exception, of hearsay testimony regarding statements by the victim that the appellant had previously robbed, assaulted and bullied the victim. The Commonwealth proffered this evidence to establish that the appellant had become enraged at his victim because he had the "effrontery" to fight back after years of abuse. *Id.* at 1072. In concluding that the trial court had erred in admitting the testimony, the Court noted that "an out-of[-]court statement by a murder victim may be admitted to establish the motive of the defendant when those statements are not offered to prove the truth of the matter asserted." *Id.* quoting *Commonwealth v. Stallworth*, 781 A.2d 110, 118 (Pa. 2001). Because the testimony in *Moore* was only relevant to the degree that the statements were true, the Court held it to be inadmissible.

More recently, this Court held in *Commonwealth v. Green*, 76 A.3d 575 (Pa. Super. 2013), that statements by the victim concerning the victim's state of mind toward Appellant are inadmissible. There, the appellant shot his girlfriend after she had expressed to friends and family members her intent to break off the relationship. The trial court allowed two witnesses to

testify as to statements made by the victim regarding her relationship with and fear of the appellant. In concluding that the trial court had erred in admitting the hearsay testimony, the Court stated:

> Considering the statements as evidence of Appellant's motive, it appears impossible to demonstrate such an inference without accepting the statements for the truth of the matter asserted. To be relevant as to Appellant's motive, we would have to accept that the Victim was fearful of Appellant and that she was attempting to end their relationship. To accept these conclusions as the basis for Appellant's motive is to accept the literal "truth" of the hearsay statements. If the Victim was not, in fact, fearful of Appellant and in the process of ending their relationship, then there was nothing about the hearsay statements that provided evidence of motive. Put more succinctly, it is only when the admitted hearsay statements are taken as truthful that they provide competent evidence of motive. [Our Supreme Court in *Commonwealth v.*] *Thornton*[, 431 A.2d 248 (Pa. 1981),] rejected the admission of such statements under the "state of mind" exception to the hearsay rule. Either these statements were relevant but inadmissible as hearsay without an applicable exception, or they were not hearsay, in which case they were irrelevant.

*Green*, 76 A.3d at 581.

Likewise, here, Hasan's hearsay testimony is only relevant for its truth, as substantive evidence that Ashmore stole Thomas' cocaine and thus provided Thomas with a motive to kill Ashmore. As in *Moore*, while these statements may have been admissible as circumstantial evidence of Ashmore's fear of Thomas, they could not properly be admitted as substantive evidence of the theft of the cocaine over Ashmore's hearsay objection. See *Moore*, 937 A.2d at 1072. As Ashmore's state of mind is not

relevant to an issue of the case, the trial court erred in admitting the testimony under the state of mind exception to the hearsay rule.

Thomas also claims that the trial court erred in admitting rap lyrics and related images. Specifically, the court allowed the Commonwealth to present evidence of a song entitled "Take It How You Wanna," which was co-authored by Thomas and two other individuals. The song tells the story of an individual who is angered that someone stole a brick of cocaine belonging to the narrator and states that "somebody gonna die on this [corner]. For touching shit don't belong to ya." In light of Hasan's testimony regarding Ashmore's statement that he had stolen cocaine from Thomas, the trial court admitted the lyrics as evidence of Thomas' state of mind pursuant to Pa.R.E. 404(b).

Generally, evidence of other crimes, wrongs or acts is inadmissible to prove a person's character in order to show that the person acted in accordance with that character on a particular occasion. Pennsylvania Rule of Evidence 404(b) provides as follows:

> **(b) Crimes, Wrongs or Other Acts.**
>
> **(1) Prohibited Uses.** Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> **(2) Permitted Uses.** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b).

Here, the trial court concluded that the rap lyrics were properly admitted to demonstrate Thomas' motive for killing Ashmore. The court stated:

> As the evidence at trial demonstrated, [Thomas] was involved in the sale of drugs, and a large quantity of drugs was stolen from his "stash house." Following the theft of drugs, [Thomas] recorded a song wherein he stated that the stolen drugs were worth a significant amount of money, money which substantially impacted his quality of life, and that said act of betrayal would be his reason for killing the person responsible. This demonstration of [Thomas'] motive, growing out of his involvement in drug dealing, and the statement of intent contained in his rap lyrics, constituted the type of evidence that our courts have unequivocally deemed admissible in similar situations. Accordingly, this evidence was properly admitted to demonstrate [Thomas'] motive for killing the decedent.

Trial Court Opinion, 12/20/13, at 11 (citations omitted).

Thomas argues that the evidence was irrelevant and, even if not, the probative value of the evidence was outweighed by its potential for unfair prejudice.[4] Thomas also argued that it only served to influence the jurors'

_____

[4] Thomas also presents constitutional claims regarding the admission of the rap lyrics. In his brief, Thomas purports to cite to a portion of the record in which he claims counsel presented the constitutional argument. However, a review of that portion of the trial record indicates that the cited argument by counsel: (1) related solely to the admission of the videotape evidence, and (2) addressed relevance and not violations of a constitutional dimension. Accordingly, as Thomas failed to preserve this issue before the trial court, the issue is waived and we will not consider it herein. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); **Commonwealth v. Colavita**, 993 A.2d 874 (Pa. 2010) (appellate courts may not reach claims that were not raised below).

opinion of Thomas' character and not to prove motive or intent. Thomas also notes that the jurors became "inordinately focused" on the rap music evidence, asking to see the CD cover and examine the lyric sheet and inquiring as to the release date of "Take It How You Wanna." Thomas asserts that rap music is "inherently fictitious" and, as such, is irrelevant and should not be used as a "confessional statement."

In response, the Commonwealth argues that the rap music evidence is clearly relevant in light of the testimony of the victim's brother, Hasan Ashmore, regarding Thomas' motive for killing Ashmore: Ashmore's alleged theft of Thomas' cocaine stash. Moreover, the Commonwealth claims, the evidence was not prohibited by Rule 404 because it was admitted to prove motive, intent and ill-will. For the following reasons, we conclude that the trial court improperly admitted the rap lyric evidence.

We begin by noting that the cases relied upon by the trial court are inapposite. First, neither case involves the admission of rap lyrics as evidence of motive. Second, both cases are factually distinguishable. In *Commonwealth v. Hall*, 565 A.2d 144 (Pa. 1989), the appellant challenged the trial court's admission of evidence regarding his past drug dealing. In affirming the trial court's allowance of the testimony, the Supreme Court concluded that the evidence presented at trial "established that the victims were known drug dealers; further that the victims recently cheated the appellant in a drug deal and, finally that the appellant had killed the victims in revenge for cheating him." *Id.* at 149. Accordingly, in light of the other

evidence adduced at trial, questions regarding the appellant's prior drug dealings were relevant to establish his motive.

Here, the only evidence either connecting Thomas to the drug trade or demonstrating that Thomas possessed a drug-related motive for killing Ashmore was the testimony of Ashmore's brother, which we have already determined to have been improperly admitted. As such, unlike in *Hall*, there is no other record evidence corroborating the Commonwealth's assertion that the rap lyrics are anything more than fictional depictions of street life in North Philadelphia.

In *Commonwealth v. Reid*, 642 A.2d 453 (Pa. 1994), the appellant asserted that the trial court erred in permitting the jury to learn of his association with the Junior Black Mafia. At trial, a Commonwealth witness testified that he had seen the appellant shoot the victim. In an attempt to impeach that witness, the defense inquired about a prior inconsistent statement indicating that the witness, who had known the appellant for years, could not identify the shooter. In response, the Commonwealth elicited testimony from the witness that his prior inconsistent statement was the result of threats made against him by the Junior Black Mafia. In affirming the trial court's ruling, the Supreme Court concluded that, by asking about the prior inconsistent statement, the defense had "opened the door" to the Commonwealth's introduction of the evidence regarding the Junior Black Mafia. Here, in contrast, Thomas did not pursue any evidence or line of questioning that would have opened the door to the introduction of

the rap music evidence. Moreover, we have now held to be excluded the only other evidence adduced at trial that would have rendered the rap lyrics relevant.

The Commonwealth relies on two Pennsylvania cases involving the admission of rap lyrics in support of its argument that the rap evidence was relevant and admissible. In **Commonwealth v. Flamer**, 53 A.3d 82 (Pa. Super. 2012), two defendants, the Flamer brothers, were charged with the murder of Allen Moment, Jr. Prior to trial in that case, the Commonwealth filed a motion *in limine* to introduce evidence that the Flamers had conspired with a third individual, Derrick White, to kill a witness in the Moment trial. The trial court granted admission of some of the Commonwealth's evidence, but denied admission of most of it. The Commonwealth filed an interlocutory appeal of the trial court's adverse rulings on several of those evidentiary issues, including one involving the admission of one of the defendants' writings and raps, recovered in his prison cell, which the trial court found to be irrelevant and prejudicial. In the raps, the defendant talked about people "'keeping their mouths shut,' sending his friends to kill for him, and 'popping shells' in people that 'run their mouth.'" **Id.** at 89. In reversing the trial court, this Court concluded that the raps "have a tendency to show contemplation for conspiratorial arrangement" and are, therefore, relevant. The Court also found that the raps were not unduly prejudicial.

We find **Flamer** to be distinguishable from the instant matter because in that case, there was other record evidence, in addition to the rap lyrics,

establishing the Flamers' motive for killing the witness. This other evidence provided a context in which the jury could consider the rap lyrics. In contrast, here, with the exclusion of Hasan Ashmore's testimony, there is no other evidence either connecting Thomas to the drug trade or establishing a motive of retaliation for drug theft. As such, the relevancy of the rap lyrics is based upon nothing more than speculation.

The Commonwealth also relies on *Commonwealth v. Ragan*, 645 A.2d 811 (Pa. 1994). There, the trial court admitted lyrics to a rap song recorded by the defendant's rap group, which described someone being shot to death. The appellant claimed that the lyrics were irrelevant since the song did not deal with the specific murder for which he was on trial. However, the Supreme Court concluded that, because the lyrics were introduced in response to testimony on direct examination in which the appellant had portrayed himself as a college student and artist, "[t]he fruits of appellant's artistic leanings were clearly relevant to rebut this testimony." Here, unlike in *Ragan*, Thomas did not open the door to the Commonwealth's presentation of the rap evidence, nor was it introduced to rebut defense evidence.

In the case at bar, the relevancy of the rap lyrics is inextricably linked to the inadmissible testimony of Hasan Ashmore, the victim's brother, regarding the fact that the victim had told him that he had stolen cocaine from Thomas. Without Ashmore's testimony, there is no nexus between the events described in "Take It How You Wanna" and the shooting of the victim.

Indeed, Ashmore's testimony was the only evidence linking Thomas to the drug trade. In each of the cases cited by the trial court and the Commonwealth, the statements contained in the rap lyrics in question were made relevant by other evidence adduced by the Commonwealth at trial. Thus, the other evidence made it more likely that the statements contained in the rap lyrics were not fictional, but rather reflections of the defendants' state of mind or motive. Here, except for the inadmissible testimony of Hasan Ashmore, the Commonwealth presented no evidence that Thomas was either involved in the drug trade or possessed any motive to kill the decedent. The lyrics did not mention the victim by name and, standing alone, any connection between the lyrics and the crime is entirely speculative. In short, considered in the vacuum created by the exclusion of Hasan's testimony, the rap lyrics do not make the fact at issue – that Thomas killed Ashmore – more or less probable. *See* Pa.R.E. 401. Therefore, it necessarily follows that the admission of the rap lyrics into evidence was also erroneous.

Having concluded that the trial court erred in admitting Hasan Ashmore's hearsay testimony and the rap evidence, we must determine whether the admission of that evidence amounted to harmless error. *Id.* at 1073.

> It is well established that an error is harmless only if we are convinced beyond a reasonable doubt that there is no reasonable possibility that the error could have contributed to the verdict. The Commonwealth bears the burden of establishing the harmlessness of the error. This burden is satisfied when the

- 13 -

Commonwealth is able to show that: (1) the error did not prejudice the defendant or the prejudice was de minimis; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial [e]ffect of the error so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Laich*, 777 A.2d 1057, 1062-63 (Pa. 2001).

After reviewing the record, we are not convinced that there is no reasonable possibility that the trial court's errors could have contributed to the verdict. Hasan Ashmore's testimony and the rap lyrics were the only pieces of evidence connecting Thomas to the sale of illegal drugs and providing Thomas with a motive to kill Ashmore. Without this evidence, the Commonwealth's case consisted of several witnesses who have recanted and/or changed their testimony regarding Thomas' involvement in the shooting of Anwar Ashmore. Thus, we cannot say that the testimony of these witnesses provided uncontradicted evidence of Thomas' guilt that was so overwhelming that the erroneously admitted evidence could not have contributed to the verdict. *See id.* Indeed, during its deliberations, the jury made multiple requests to examine the evidence involving the rap song, demonstrating the importance that the jury placed on this evidence.

For the foregoing reasons, we are constrained to vacate Thomas' judgment of sentence and remand the case for a new trial in accordance with the dictates of this memorandum.[5]

Judgment of sentence vacated; case remanded; jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/2/2015

---

[5] Because of our disposition of the matter, we need not address Thomas' remaining issues on appeal.