565 A.2d 144

COMMONWEALTH Of Pennsylvania, Appellee,

v.

Donald HALL, Appellant.

Supreme Court of Pennsylvania.

Argued April 11, 1989.

Decided Oct. 19, 1989.

John P. Cotter, Philadelphia, for appellant.

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Chief, Appeals Div., Robert A. Graci, Chief, Deputy Atty. Gen., for appellee.

Before LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION

McDERMOTT, Justice.

The appellant was tried by a jury and found guilty on two counts of murder in the first degree[1] and one count of

1. 18 Pa.C.S., §§ 2501; 2502(a).

possession of an instrument of crime.[2] After further deliberations that same jury rendered two separate verdicts of death for the two first degree murder convictions.[3] Subsequently, the trial judge ordered a new trial. This order was vacated, the convictions were reinstated and the case was remanded to the Court of Common Pleas of Philadelphia County, for sentencing. *See Commonwealth v. Hall*, 361 Pa.Super. 634, 517 A.2d 1364 (1986). Judgement of sentence was entered on June 18, 1987.[4] In addition to imposing the sentences of death fixed by the jury,[5] the sentencing judge ordered that any commutation of the death sentences was to run consecutive to each other and the other unrelated sentences the appellant was then serving. He further imposed a consecutive sentence of two and one-half to five years imprisonment on the conviction for possession of an instrument of crime. Appellant directly appealed the judgements of sentence.[6]

■ The pertinent facts are as follows. On Wednesday, the 18th of March, 1981, at approximately 2:00, A.M., members of the Philadelphia Police Department's Mobile Crime Detection Unit were summoned to investigate a disturbance in a building at 2308 West Diamond Street in Philadelphia, Pennsylvania. Upon arrival they discovered the bodies of Richard Mayberry and George Ellerbee. Mayberry's body, with two gun shot wounds to the head, was found on the second floor landing of the north fire tower of this building. From there police followed a trail of blood which lead them to apartment 305 of the building, where they found Ellerbee's body slumped on the sofa in the living room. From the apartment police recovered several fire-arms, live ammunition, spent cartridges, money and a large quantity of illicit drugs. Police learned that the apartment was rented

2. 18 Pa.C.S., § 907, et seq.

3. 42 Pa.C.S., § 9711.

4. The appellant's trial was presided over by the Honorable Edwin S. Malmed. He had retired prior to the remanding of this case. Judgement of sentence was entered by the Honorable Albert F. Sabo.

5. 42 Pa.C.S., § 9711(g).

6. *See* 42 Pa.C.S., §§ 9722(4); 9711(h)(1). Pa.R.A.P., 702(b).

to an Evelyn B. Lingham. On March 20, 1981, Ms. Lingham informed the police that she was present on the night of the murders. She named the appellant as the individual who killed Mayberry and Ellerbee. Another individual, a Paul Fisher, also informed the police that he too was in the the apartment on the night in question. He also named the appellant as the killer. On May 20, 1981, two months later, the appellant was apprehended and formally charged in connection with the killings. His trial began on April 28, 1982 and the jury returned a verdict of guilty on May 11, of that year. He raises several claims of trial court error. Before addressing these claims we must first determine whether the evidence was sufficient to sustain his convictions.[7]

■ A review of the record reveals that the principle evidence presented at trial were statements by Ms. Lingham and Mr. Fisher. The trial court permitted the Commonwealth to introduce these statements as substantive evidence,[8] even though both witnesses recanted prior statements. Two days after the murders, Ms. Lingham made three separate statements. The first two were transcribed by the police and signed by her and the third was tape recorded.

7. It is the practice of this court in cases in which the death penalty has been imposed to review the sufficiency of the evidence supporting the conviction. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 26–27, n. 3, 454 A.2d 937, 942, n. 3 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). The test for determining the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as the verdict winner and drawing all proper inferences favorable to the Commonwealth, the jury could reasonably have determined all elements of the crime to have been established beyond a reasonable doubt. *Commonwealth v. Syre*, 507 Pa. 299, 489 A.2d 1340 (1985).

8. The record reflects that Ms. Lingham testified that at the time she went to the police, she was high on barbituates, and while denying any knowledge of the statement, admitted that it was her signature on the statements. At trial she also denied that she was at the apartment on the night in question. Mr. Fisher testified that his prior statement was coerced by police and further that it was two white men, possibly members of the F.B.I., whom he saw in the apartment that night.

In the first statement Ms. Lingham denied any knowledge of the murders. Subsequently, in her second and third statements, she told them that she was contacted at her sister's house by the appellant and that he asked her to meet with him, which she did. She stated that when she did he asked her to do him a favor, namely to telephone her apartment and to tell Mayberry that she wanted to come up to Mayberry's apartment. Ms. Lingham stated that the appellant told her that he wanted to see Mayberry because Mayberry had cheated him in a drug deal. Further she explained that Mayberry was a drug dealer and that he had been paying her $300.00 a week to use her apartment to sell drugs.

Ms. Lingham also testified that she called, as appellant requested, but that Mayberry told her to wait for a half an hour. She and the appellant then waited together during which time the appellant showed her a .22 caliber revolver which was concealed under his jacket. They went to the apartment together and appellant knocked on the door. When Mayberry answered, the appellant told him that Ms. Lingham wanted to lay down and get some rest. Mayberry then opened the door. As the appellant entered the apartment, he walked next to Ellerbee, who was sitting on the couch and said, "why do people cross people". He then shot Ellerbee in the head, turned to Mayberry and repeated "why do people cross people". At that point she ran and Mayberry followed. She then heard two more shots. After she got to the first floor, she returned to her apartment and found Mayberry lying in the hallway, bleeding from the back of his head. She then saw the appellant, with gun in hand, trying to get Paul Fisher to come out of the bedroom of Mayberry's apartment. Ms. Lingham then ran outside the apartment and attempted to flag down a cab. By the time she had gotten a cab to stop, the appellant arrived. Both got into the cab and later dropped the appellant at a hotel.

Fisher's statement to the police corroborated Ms. Lingham's second and third statements to them. He stated that

he went to the apartment on the night in question with his girlfriend and that both were admitted by Mayberry. Further that he and his girlfriend were in the bedroom when the appellant and Ms. Lingham arrived, that the bedroom door was partly open and that he saw both of them. He stated that he then heard four shots and that afterwards, he saw the appellant coming towards the bedroom door. He then quickly shut the door and locked it. He and his girlfriend then exited the room through a window.

This evidence, if accepted by the jury, was sufficient to sustain the appellant's conviction beyond a reasonable doubt. *See Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (1986); *Commonwealth v. Riggins*, 478 Pa. 222, 386 A.2d 520 (1978).

These statements were also corroborated by the trial testimony of other Commonwealth witnesses. A Ms. Geraldine Baxter testified that she was Paul Fisher's girlfriend at the time and that she was in the bedroom of the apartment during the shootings. She testified that she had been sleeping and that she was awakened by the sound of gun fire. When she awoke, Fisher was leaning against the bedroom door holding it shut. Further that he called out to a Ms. Lingham by name and that a women replied. She then heard a male voice on the other side of the door telling Fisher to let him in. She testified that they looked for a gun in the room but that when they could not find one, they both exited the bedroom through the window.[9]

The statements made by Ms. Lingham and Mr. Fisher were corroborative of Ms. Baxter's testimony. The testimony given by the investigating officers and the medical examiner, further aided in that regard.[10] Finally, the appellant himself testified that he knew that the police were looking for him in-connection with the murders two days

9. Ms. Baxter was found by police on the window ledge of the apartment immediately after the killings.

10. Testimony establishing the locations of the bodies, the number and nature of the wounds, and the results of ballistics tests performed on the bullets recovered from the victims, all corroborated the statements given by Lingham and Fisher to the police two days after the killings.

after they were committed, but that he did not turn himself in. We believe that the evidence was sufficient to sustain the appellant's convictions. We will next address the appellant's specific claims of error, seriatim.

■ The first issue raised by the appellant is that the trial court erred by allowing certain trial exhibits, namely the written and tape recorded statements of Mr. Fisher and Ms. Lingham, to be sent out with the jury during deliberations. He asserts that this violated Rule 1114, of the Pennsylvania Rules of Criminal Procedure. Rule 1114 provides:

> Upon retiring for deliberations, the jury shall not be permitted to have a transcript of any trial testimony, nor a copy of any written confession by the defendant, nor a copy of the information or indictment. Otherwise, upon retiring, the jury may take with it such exhibits as the trial judge deems proper.

He concedes that these exhibits were not specifically prohibited by the rule but argues that the practice of allowing written and tape recorded statements to go out with the jury during its deliberations in general, could be used to circumvent the rule's prohibition against trial transcripts by unscrupulous individuals who could manufacture such evidence specifically for trial. While the appellant points out an obvious hazard of the rule, there is no evidence in the record to suggest such a finding in this case, thus we do not believe that the trial court abused its discretion. *See Commonwealth v. Riggins*, 478 Pa. 222, 232–33, 386 A.2d 520, 525–26 (1978).[11]

■ The appellant further argues that the trial court erred by allowing certain testimony to be introduced which established that Ms. Lingham failed a polygraph examination after giving her first statement to police, but prior to

11. Here, as in *Riggins*, "the real controversy centered upon the truthfulness of [the] accusations". *Id.*, 478 Pa. at 233, 386 A.2d at 526. However, "we suggest in the future that this practice should not be followed". *See Commonwealth v. Baker*, 466 Pa. 382, 398, 353 A.2d 406, 414 (1976).

her second statement. The record reflects that the first time the jury was made aware of Ms. Lingham's polygraph examination was during defense counsel's cross-examination of a Detective Curcio. It is apparent from the record that appellant's trial counsel intentionally elicited this information in an attempt to establish that the later two statements, by Ms. Lingham, were coerced by the police. *See* N.T., 5/4/82, pp. 5.24–5.25.[12] It is well established that failed trial tactics of defense counsel are not grounds for a new trial. Thus the appellant cannot complain regarding reference to the polygraph examination made during trial. *See Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Clemmons*, 505 Pa. 356, 479 A.2d 955 (1984); *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). In addition the appellant cannot contest the reference to the polygraph examination in the exhibits as it was merely cumulative of trial testimony. *Commonwealth v. Terry*, 513 Pa. 381, 405, 521 A.2d 398, 410 (1987) (Improper admission of evidence which is cumulative of properly admitted evidence and is uncontroverted is not reversible error.); quoting, *Commonwealth v. Story*, 476 Pa. 391, 411, 383 A.2d 155, 166–67 (1978). Finally, defense counsel never sought to have the reference to the polygraph examination removed before the statements were sent out with the jury, thus this complaint is untimely. Since the reference in the exhibits was merely cumulative of the testimony, we do not believe the appellant was prejudiced thereby.

**12.** The record establishes that defense counsel was aware of the polygraph examination before asking the witness "what happened to make Ms. Lingham change her story?" Further, after the witness responded to defense counsel's question, instead of objecting to the response, counsel asked: "Was she polygraphed at the end, too"? We believe that defense counsel was trying to show that Ms. Lingham only made the later statements after the police told her she failed the polygraph examination thereby attacking their validity.

Additionally the record reflects that the trial court promptly instructed the jury to disregard the reference to the polygraph examination. *See Commonwealth v. Garland*, 475 Pa. 389, 397, 380 A.2d 777, 780–81 (1977).

The appellant next asserts that the prosecution improperly questioned him and others about his past drug dealings. He argues that this line of questioning was improper because it exposed the jury to his unrelated criminal conduct. As a general rule, evidence of a separate crime is inadmissible.[13] However, "where the evidence is relevant, the mere fact that testimony of another crime may be prejudicial will not prevent its introduction into evidence". *Commonwealth v. Lasch*, 464 Pa. 573, 347 A.2d 690 (1975). Here the evidence established that the victims were known drug dealers; further, that the victims recently cheated the appellant in a drug deal and, finally that the appellant had killed the victims in revenge for cheating him. The prosecution's questions were designed to establish the appellant's motive for the killings. These questions were proper.

Next he asserts that the prosecution knowingly presented false testimony in that one of its witnesses misstated the extent of the appellant's prior robbery conviction.[14] He argues that this testimony was false and that the prosecution is guilty of suborning perjury. The record reflects that this witness testified that appellant was previously convicted of "six counts of robbery" while in reality he was convicted of six separate charges arising out of a single robbery. N.T., 5/6/82, p. 7.68. While this witness' testimony was somewhat misleading in that it created an inference that he was convicted of six different robberies, this was in fact not what the witness stated, thus it did not amount to perjury. Further the record reflects that any ambiguity was removed during cross-examination. *See* N.T., 5/6/82, p. 7.74. Thus the appellant was not prejudiced by the statement and is therefore not entitled to a new trial based upon this allegation of error.

Next he asserts that the trial court erred by allowing the prosecution to admit a letter written by him to the

13. *Commonwealth v. Morris*, 513 Pa. 169, 175, 519 A.2d 374, 376 (1986).
14. The defendant took the witness stand to testify on his behalf.

victim's families. This letter was signed by the appellant and at trial, he admitted to writing it. The letter was read to the jury, and provided as follows:

I would like your to apologize to the families for me. Let then know I am sorry about what happened to the deceased members of their families. I can't bring them back, no, can I compensate for anyone else.

It is my contention that I am innocent. I guess that am innocent.

I have a mother and father along with sisters and brothers. I love them dearly, so I know how you feel.

Once again, I am very sorry for both of you.

N.T., pp. 6.182–6.183.[15]

He argues that the letter merely expressed the sympathy and condolence that he felt towards the victims' families and thus it should not have been admitted. Accepting this as true, we fail to see how the admission of the letter amounted to more than harmless error. However as the appellant recognizes in making his argument, an admission of guilt could be drawn from this apology and equivocal assertion of innocence.[16] We do not believe that the trial court abused its discretion in admitting the letter into evidence.[17]

**15.** The letter was introduced during the prosecution's cross-examination of the appellant.

**16.** If we accept the appellant's argument that the statement contained no evidentiary value at all and that the trial court improperly admitted the statement, then we would have to find that its admission was not prejudicial and the error would not entitle the appellant to a new trial. However we believe that this statement, like the appellant's evasion of the police for two months, was relevant and admissible, advancing an inference of guilt. *See Commonwealth v. Dollman,* 518 Pa. 86, 541 A.2d 319 (1988); *Commonwealth v. Colson,* 507 Pa. 440, 464–465, 490 A.2d 811, 823–824 (1985), *cert. denied,* 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986).

**17.** The appellant also complains that the prosecutor unfairly questioned him about the meaning of the letter; the prosecutor misstated the meaning of the letter during closing argument; his trial counsel was ineffective in not objecting and requesting a curative instruction; the trial court erred in not giving a cautionary instruction to the jury limiting its evidentiary value. All of these claims are based upon the appellant's assertion that the jury could not properly draw an infer-

■■■ Appellant next argues that the Court improperly applied *Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (1986) to the Commonwealth's appeal from the trial court's order granting a new trial. Specifically he asserts that the application of *Brady*, to excuse the trial court's error in permitting the Commonwealth's use of the statements as substantive evidence, violated the prohibition against ex post facto laws, of Art., § 10, of the United States Constitution because *Brady* represented a "sharp break in the web of the law".

The record reflects that the trial court, following *Commonwealth v. Loar*, 264 Pa.Super. 398, 399 A.2d 1110 (1979), ruled that both Lingham's and Fisher's statements were admissible as substantive evidence on April 28th and 29th, 1982 respectively. Subsequent to the jury's verdict, the trial court granted a new trial, after finding that it was in error under our decision in *Commonwealth v. Waller*, 498 Pa. 33, 444 A.2d 653 (1982), decided May 2, 1982. The Commonwealth appealed this decision and the Superior Court affirmed. On appeal to this Court, on June 11, 1986, we reversed and remanded the case for consideration in light of our decision in *Brady*. On reconsideration, the Superior Court reversed its decision to affirm the lower court's grant of a new trial based upon *Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (1986). The Superior Court remanded the case for resentencing and the appellant never appealed the Superior Court's decision nor our order of remand.

■■■ It is evident that the trial court relied on the latest appellate court pronouncement in this area at the time it admitted the statements. Furthermore it is apparent that *Brady* was not the "sharp break in the web of the law" that the appellant suggests. Moreover, because he did not appeal our prior decision or the Superior Court's decision, this claim of error has been waived. Additionally, counsel cannot be deemed ineffective for failing to raise this issue since

ence of guilt from the letter. Since we believe that the jury could properly have drawn such an inference, these claims are meritless.

the evidence he now complains of, would be admissible today if the appellant were retried as he requests.

 He next argues that the trial court compelled Ms. Lingham to testify at trial in violation of her privilege against self-incrimination.[18] The record reflects that an in-camera hearing was held to determine whether Ms. Lingham was going to refuse to testify on the basis of her privilege against self-incrimination. At this hearing Ms. Lingham stated that if called she would refuse to testify. The trial judge then informed her that it was his belief, based upon the fact that she had testified under oath at the appellant's preliminary hearing, that she had waived her privilege and that if she refused to testify, he would hold her in contempt. The appellant asserts that this violated her privilege against against self-incrimination. The general rule is that waiver of the privilege against self-incrimination in one proceeding does not affect the right to invoke it in another. *See Commonwealth v. Rodgers*, 472 Pa. 435, 372 A.2d 771 (1977); *Commonwealth v. Fisher*, 398 Pa. 237, 157 A.2d 207 (1960).[19] However as the privilege is personal the appellant has no standing to assert it for the benefit of another. *See In re Search Warrant B–21778; Appeal Of Robert Gartley, Sr.*, 513 Pa. 429, 521 A.2d 422 (1987); *Commonwealth v. Butler*, 448 Pa. 128, 131, 291 A.2d 89, 90–91 (1972).

**18.** He further claims that his trial counsel was ineffective in failing to object to the impropriety. The record fails to support this. *See* N.T., 4/28/89, 1.107–1.110.

**19.** The record is somewhat unclear on the point but it reflects that Ms. Lingham was represented by counsel at some time during the preliminary stages of the prosecution of this case. The trial judge relied on this in forming his opinion to hold Ms. Lingham in contempt if she refused to testify. There is authority for the proposition that once a witness makes a knowing and intelligent waiver of the right against self-incrimination in one proceeding, it is waived for further proceedings in the same matter as long as it would not require disclosure of new or additional information. *See Ellis v. United States*, 135 U.S. App.D.C. 35, 416 F.2d 791 (1969); *Commonwealth v. Weed*, 17 Mass. App. 463, 459 N.E.2d 144 (1984). We neither condone nor condemn the trial judge's action here because the appellant has no standing, we merely note that it was supported by some authority.

The appellant next asserts that the prosecutor made several improper and prejudicial comments in closing remarks to the jury during the guilt phase of the trial.[20] We have reviewed each of the challenged remarks and believe that they were reasonably derived from properly admitted evidence. Accordingly we find these claims to be meritless.

Finally the appellant challenges the sentences of death. His first argument concerns the prosecutor's closing remarks to the jury during the penalty phase. The record reflects that the prosecutor made several references to the possibility that the appellant would kill again if not sentenced to death. Most representative of the prosecution's remarks are the following:

... give him life, so he can get paroled one day and kill somebody else..

. . . . .

Put [the] mad dog out of his misery before he kills someone else, kills somebody in prison, escapes and kills somebody.

N.T., 5/12/82, pp. 10.116, 10.119. The appellant asserts that the above comments and others, violated his right to Due Process and that they were highly prejudicial.

The Commonwealth asserts that the statements made by the prosecutor were in fair response to defense counsel's comments and appellant's testimony during the sentencing hearing and further that the prosecution's statements were supported by the record.

The record reflects that at the time the appellant committed the murders in question, he was out on parole on other criminal convictions including an unrelated homicide. It

---

20. Specifically he complains that the prosecutor made improper comments on the improperly admitted letter from the appellant to the families of the victims; the prosecutor improperly referred to the appellant's drug activities; the prosecutor improperly commented that Fisher's statement to police corroborated Lingham's statement to police; the prosecutor improperly commented on Fisher's trial testimony; and the prosecutor improperly commented on Lingham's trial testimony. In addition the appellant claims that his trial counsel was ineffective in failing to object to the comments.

further established that during the sentencing hearing, appellant testified to the effect that because of this he would have to serve out the time remaining on his prior convictions, serve time for the murders in question, and would probably be 80 years old before he got out of jail. The record reflects that his trial counsel, in arguing for a life sentence, stated "he is going to spend the rest of his life in jail".

In *Commonwealth v. Aljoe*, 420 Pa. 198, 208, 216 A.2d 50, 56 (1966) the Court held that "where a [prosecutor] ... deliberately interjects considerations of parole, this is not only unfair and improper but likely to prejudice the defendant". Later in *Commonwealth v. Floyd*, 506 Pa. 85, 484 A.2d 365 (1984) we reaffirmed the principle enunciated in *Aljoe* by stating:

> It is extremely prejudicial for a prosecutor to importune a jury to base a death sentence upon the chance that a defendant might receive parole, ..., or the possibility of escape from prison, ..., particularly where, as here, the jury was cognizant of the facts that [defendant] had previously been convicted of prison breach and, also, that he had attempted to escape from custody the very morning of the sentencing hearing.

*Id.*, 506 Pa. at 95, 484 A.2d 370, (citation omitted). Subsequently in *Commonwealth v. Clayton*, 516 Pa. 263, 532 A.2d 385 (1987) we held that where defense counsel not only raised the issue of parole but mislead the jury about the possibility of parole, the prosecution can make a fair response to the defense's argument.

Accepting for the sake of argument that the appellant's testimony and his trial counsel's closing remarks, amounted to argument which would permit the prosecution to give a fair response under *Clayton*, we still find that the prosecution went beyond the bounds of fair response here because the prosecution speculated that the appellant would kill again unless the jury killed him first. In deciding *Clayton* we recognized that the prosecution must be given reason-

able latitude to respond to defense's arguments, however this case is distinguishable from *Clayton.* In *Clayton* we relied not only on the fact that the defense opened the door by interjecting misleading statements regarding the possibility of parole into the sentencing proceeding, but also on the fact that in *Clayton,* the prosecution did not speculate on what the defendant might do if paroled, while in *Aljoe* and *Floyd* the prosecution did. *See Clayton,* at 286, 532 A.2d at 397 (1987) (These statements are more serious and plainly prejudicial). Here the defense never argued nor attempted to prove [21] that the appellant would not kill again. Thus the prosecution violated the rule established by this court in *Aljoe.* Further the prosecution's speculation as to what the appellant might do if paroled, was extremely prejudicial particularly where the jury was cognizant of the fact that the appellant was on parole at the time he committed the murders he was being sentenced for. *See Floyd,* 506 Pa. at 95, 484 A.2d at 370.[22]

Accordingly we vacate the sentences of death and remand the case for resentencing in accordance with 42 Pa.C.S. § 9711(h)(2), as amended by Act No. 1988–179.[23]

NIX, C.J., did not participate in the consideration or decision of this case.

FLAHERTY, J., concurs in the result.

21. *See Commonwealth v. Abu–Jamal,* 521 Pa. 188, 214, 555 A.2d 846, 858 (1989) (if defendant offered evidence that he would not be dangerous in the future then prosecution could present evidence contradicting the defendant's assertion).

22. The appellant raises other issues regarding the sentencing proceeding, however in light of our ruling on this issue we decline to address them. Even if we ruled favorably upon them, they would not effect our disposition of the case.

23. Appellant asserts that this case is not governed by the recent amendment to § 9711(h)(2). The case falls squarely within the amendment, this is a direct appeal and thus we must apply the statute as amended. *See Commonwealth v. Caldwell,* 516 Pa. 441, 449, 532 A.2d 813, 817 (1987); *Commonwealth v. Williams,* 514 Pa. 62, 522 A.2d 1058 (1987).