J-S33020-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SCOTT ALLEN SHREFFLER | : | |
| | : | |
| Appellant | : | No. 16 MDA 2024 |

Appeal from the PCRA Order Entered December 5, 2023
In the Court of Common Pleas of Mifflin County Criminal Division at
No(s): CP-44-CR-0000247-2016

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SCOTT ALLEN SHREFFLER | : | |
| | : | |
| Appellant | : | No. 17 MDA 2024 |

Appeal from the PCRA Order Entered December 5, 2023
In the Court of Common Pleas of Mifflin County Criminal Division at
No(s): CP-44-CR-0000250-2016

BEFORE: OLSON, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED DECEMBER 13, 2024**

Scott Allen Shreffler appeals from the order denying his timely petition filed pursuant to the Post Conviction Relief Act. 42 Pa.C.S.A. §§ 9541-46. We reverse and remand for a new trial.

The pertinent facts and protracted procedural history may be summarized as follows: Shreffler was charged with three counts of delivery

of a controlled substance as a result of three controlled buys made by a confidential informant ("CI") within Shreffler's residence. The CI was wearing a wire during two of the transactions so audio recordings were made. Shreffler was also charged with possession of a controlled substance with intent to deliver, based upon drugs found during the later execution of a search warrant at his home.

Prior to trial, Schreffler filed a motion to suppress the in-home recordings. The trial court held an evidentiary hearing on January 5, 2017. Thereafter, the trial court denied suppression, because it found that the Commonwealth had complied with all of the requirements of the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S.A. §§ 5701-5782 ("Wiretap Act"). Just prior to trial, Shreffler filed a motion *in limine* in which he again sought to exclude the in-home recordings, and the trial court again denied his request.

At trial, Shreffler admitted that he sold buprenorphine to the CI on March 28, 2016. Regarding the other two controlled buys that occurred on March 21 and March 25, 2016, the Commonwealth presented the testimony of the CI, testimony from the Detective Craig Snyder, the county chief detective, as well as testimony from other police officers who participated in the controlled buys. The Commonwealth also played portions of the relevant in-home recordings, while a transcript of the portion played was displayed on a video screen for the jury.

On March 21, 2017, a jury found Shreffler guilty of the three counts of drug delivery but acquitted him of the charge of possession with intent to deliver. The trial court ultimately sentenced Shreffler to an aggregate sentence of 104 to 208 months of imprisonment. Thereafter, the trial court denied Shreffler's post-sentence motion in which Shreffler again challenged the denial of his suppression motion. Shreffler appealed.

On December 21, 2018, this Court filed an opinion in which we vacated Shreffler's judgment of sentence, vacated the trial court's order denying his post-sentence motion, and remanded the case for a new suppression hearing. *Commonwealth v. Shreffler*, 201 A.3d 757, 767 (Pa. Super. 2018) ("*Shreffler I*"). In addition, we directed the Commonwealth to file a motion to unseal the wiretap and provide to Shreffler's counsel the affidavit of probable cause, the order authorizing the wiretap, and the documents of consent. *Id.* at 767-68. Further, this Court stated that Shreffler's counsel "may file an amended motion to suppress, and the court may hold a suppression hearing at its discretion." *Id.* at 768. Finally, we stated "[i]f the trial court again denies [Shreffler's], motion, then it shall reimpose the [] the sentence, and [Shreffler will then be] entitled to his post-sentence and appellate rights." *Id.*

Following remand, the Commonwealth filed a motion to unseal the wiretap and provided the pertinent documents to Shreffler's counsel. On March 25, 2019, Schreffler's counsel filed an amended suppression motion, and the Commonwealth filed an answer. The trial court scheduled a hearing

on the motion for June 17, 2019. At that time, the Commonwealth made an offer of proof that it would produce the testimony of the detective who signed the wiretap affidavit. Shreffler objected to any testimony, and asked the trial court to decide the suppression issue based on the motion, the answer, and the wiretap documents provided. The trial court took the matter under advisement.[1]

By order entered July 25, 2019, the trial court denied Shreffler's amended petition. That same day, the trial court reimposed Shreffler's judgment of sentence. Following the denial of his post-sentence motion, Shreffler appealed to this Court. In that appeal, among the issues Shreffler raised was that the trial court erred in permitting the jury to review transcripts of the audio recordings during its deliberations. We found this issue waived for lack of objection by trial counsel, but noted that Shreffler could later challenge counsel's ineffectiveness in a PCRA petition. We therefore affirmed Shreffler's judgment of sentence on April 6, 2021. *Commonwealth v. Shreffler*, 249 A.3d 575 (Pa. Super. 2021) ("*Shreffler II*").

On May 9, 2022, Shreffler filed a timely *pro se* PCRA petition. The PCRA court appointed counsel, and PCRA counsel filed an amended petition on February 10, 2023. Thereafter, the PCRA court held a two-day evidentiary hearing. On the first day of the hearing, held on July 26, 2023, the adult

_____

[1] On June 18, 2019, Shreffler filed a *pro se* supplement to counsel's amended petition, which counsel later endorsed. The Commonwealth filed another response.

supervisor for the county probation department and trial counsel testified. On the second day of the hearing, held on September 22, 2023, Shreffler testified at length. By order entered December 5, 2023, the PCRA court denied Shreffler's amended petition. These appeals followed, which we later consolidated. Both Shreffler and the PCRA court have complied with Pennsylvania Rule of Appellate Procedure 1925.

Shreffler raises the following five issues on appeal:

I.    Whether the [PCRA] court erred in finding that trial counsel was not ineffective for failing to argue any of the specific and exclusive means available to [Shreffler] at the remanded suppression hearing under the Wiretap Act for excluding the contents of any wiretap, electronic, or oral communications or "evidence derived therefrom" including the failure by the prosecution to submit a memorandum of approval prior to the issuance of an order of authorization and the failure to challenge in some form the non-production of a final report?

II.   Whether the [PCRA] court erred in finding that trial counsel was not ineffective for failing to object to the introduction of the transcripts of the audio recordings, which were never introduced as trial exhibits in violation of Rule 646(A) & (C) (1) & (2) of the Pennsylvania Rules of Criminal Procedure, which error was magnified when trial counsel further failed to request that a cautionary instruction be given in which the jury was advised that any discrepancies between the tapes and the transcripts must be resolved in favor of their collective recollection of the audio recordings?

III.  Whether the [PCRA] court erred in finding that trial counsel was not ineffective for attending an off-the-record motion *in limine* hearing at which prejudicial and consequential decisions were made regarding the introduction of only a limited portion of certain audio recordings at trial without the presence of or consultation with [Shreffler] in violation of his constitutional rights under the Sixth Amendment to the United States Constitution, which mandates that an

- 5 -

accused has the right to be present in court at every critical stage of a criminal trial?

IV. Whether the [PCRA] court erred in finding that trial counsel was not ineffective for failing to request specific jury instructions regarding the significance and potential consideration and use of [the CI's] past *crimen falsi* convictions as well as his potential for bias and to color his testimony in favor of the prosecution in light of his then pending aggravated assault charge as providing bases for the jury to reject the entirety of his testimony at trial?

V. Whether the [PCRA] court erred in finding that trial counsel was not ineffective for permitting [Shreffler] to be sentenced pursuant to an erroneous [prior record score] of 5, when the correct [prior record score] that should have been utilized was a 4?

Shreffler's Brief at 5 (excess capitalization omitted).[2]

This Court's standard of review for an order denying a PCRA petition calls for us to "determine whether the ruling of the PCRA court is supported by the evidence and free of legal error. The PCRA court's factual findings will not be disturbed unless there is no support for the findings in the certified record." ***Commonwealth v. Webb***, 236 A.3d 1170, 1176 (Pa. Super. 2020) (citing ***Commonwealth v. Barndt***, 74 A.3d 185, 191–92 (Pa. Super. 2013)).

All of Shreffler's issues challenge the effectiveness of trial counsel. To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish, by a preponderance of the evidence, that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. ***Commonwealth***

_____

[2] We have reordered Shreffler's issues for ease of disposition.

***v. Johnson***, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." ***Id.***

The tripartite test we apply is well-settled, and each prong of the test has been explained as follows:

> The burden is on the [petitioner] to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel has no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

> We have explained that a claim has arguable merit where the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.

> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

> Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

***Commonwealth v. Sandusky***, 203 A.3d 1033, 1043-44 (Pa. Super. 2019) (citations omitted; formatting altered).

In his first ineffectiveness claim, Shreffler argues that trial counsel should have raised certain procedural irregularities regarding the application

for, and records from, the wiretap application as a basis to suppress the evidence. We address this issue first because, if successful, Shreffler's remaining issues would be moot.

The Wiretap Act prohibits the intentional interception of any oral communication unless all parties consent to the recording. *Commonwealth v. Katona*, 191 A.3d 8, 13 (Pa. Super. 2018) (*en banc*) (citing Pa.C.S.A. § 5703). Section 5704 of the Act sets forth a number of exceptions including the following:

> It shall not be unlawful and **no prior court approval shall be required under this chapter** for:
>
> ***
>
> (2) Any investigative or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire, electronic or oral communication involving suspected criminal activities, including, but not limited to, the crimes enumerated in section 5708 (relating to order authorizing interception of wire, electronic or oral communications), where:
>
> (i) Deleted.
>
> (ii) one of the parties to the communication has given prior consent to such interception. However, no interception under this paragraph shall be made **unless . . . the district attorney** . . . of the county wherein the interception is to be initiated, has reviewed the facts and is satisfied that the consent is voluntary and **has given prior approval for the interception**; however, such interception shall be subject to the recording and record keeping requirements of section 5714(a) (relating to recording of intercepted communications) and that the . . . district attorney

. . . authorizing the interception shall be the custodian of recorded evidence obtained therefrom[.]

18 Pa.C.S.A. § 5704(2)(ii)(emphasis added).

When the proposed interception is going to occur in the nonconsenting party's residence, the Act provides additional safeguards. In this circumstance, the interception may occur if:

(iv) the requirements of this subchapter are met. If an oral interception otherwise authorized under the paragraph will take place in the home of a nonconsenting party, then, **in addition to the requirements of subparagraph (ii), the interception shall not be conducted until an order is first obtained from the president judge, or his designee** who shall also be a judge, of a court of common pleas, **authorizing such in-home interception**, based upon an affidavit by an investigative or law enforcement officer that establishes probable cause for the issuance of such an order. No such order or affidavit shall be required where probable cause and exigent circumstances exist. For the purposes of this paragraph, an oral interception shall be deemed to take place in the home of a nonconsenting party only if both the consenting and nonconsenting parties are physically present in the home at the time of the interception.

18 Pa.C.S.A. § 5704(2)(iv) (emphasis added).

In support of his first issue, Shreffler first cites Section 5721.1(b) of the Act which provides:

**(b) Motion to exclude.--**Any aggrieved person who is a party to any proceeding in any court, board or agency of this Commonwealth may move to exclude the content of any wire, electronic or oral communication, or evidence derived therefrom, on any of the following grounds:

(1) Unless intercepted pursuant to an exception set forth in section 5704 (relating to exceptions to prohibition of interception and disclosure of communications), the interception was made without prior procurement of an order of authorization under section 5712 (relating to issuance of order and effect) or an order

- 9 -

of approval under section 5713(a) (relating to emergency situations) or under section 5713.1(b) (relating to emergency hostage and barricade situations).

(2) The order of authorization issued under section 5712 or the order of approval issued under section 5713(a) or 5713.1(b) was not supported by probable cause with respect to the matters set forth in section 5710(a)(1) and (2) relating to grounds for entry of an order).

(3) The order of authorization issued under section 5712 is materially insufficient on its face.

(4) The interception materially deviated from the requirements of the order of authorization.

(5) With respect to interceptions pursuant to section 5704(2), the consent to the interception was coerced by the Commonwealth.

(6) Where required pursuant to section 5704(2)(iv), the interception was made without prior procurement of a court order or without probable cause.

18 Pa.C.S.A. § 5721.1(b).

Shreffler then argues that "[i]n pursuing the Amended Motion to Suppress, Trial counsel focused upon technical violations . . . none of which fell within Section 5721.1(b)'s ambit such that even if correct, the remedy of evidence suppression was not available." Shreffler's Brief at 33. Instead, citing subsections (b)(2) and (b)(3), Shreffler argues that the wiretap documents provided following remand reveal that the district attorney did not give prior approval, because, based on the pertinent time-stamps, "the District Attorney did not execute their Memorandum of Approval, which was required to accompany the Application for In-[Home] Wiretap until March 22, 2016, at 10:51 a.m., which is one minute after the Trial Court had already executed

the Order, which authorized the interception." ***Id.*** According to Shreffler, this "discrepancy constitutes ineffective assistance of counsel by not being raised." ***Id.*** We cannot agree.

Shreffler fails to adequately explain how this time discrepancy violates the Wiretap Act. He asserts that, because there was a lack of prior approval by the District Attorney, "the Order of Authorization was not supported by probable cause because of its premature issuance and this same Order was materially insufficient on its face since the Memorandum of Approval had not been previously signed, which violates 18 Pa.C.S.A. § 5721.1(b)(2 &3)[.]" Shreffler's Brief at 36.

Shreffler has not convinced us that either of these two subsections are applicable to the in-home recordings that occurred in this case. Section 5721.2(b)(2) establishes a basis for exclusion if "[t]he order of authorization issued under section 5712 or the order of approval issued under section 5713(a) or 5713.1(b) was not supported by probable cause[.]" Section 5712(a) reads as follows:

> **§ Issuance of order and effect**
>
> **(a) Authorizing orders.**—An order authorizing the interception of any wire, electronic or oral communications shall state the following:
>
> (1) The identity of the investigative or law enforcement officers or agency to whom the authority to intercept wire, electronic or oral communications is given and the name and official identity of the person who made the application.
>
> (2) The identity of, or a particular description of, the person, if known, whose communications are to be intercepted.

(3) The character and location of the particular communication facilities as to which, or the particular place of the communication as to which, authority to intercept is granted.

(4) A particular description of the type of communication to be intercepted and a statement of the particular offense to which it relates.

(5) The period of time during which such interception is authorized, including a statement as to whether or not the interception shall automatically terminate when the described communication has been first obtained.

18 Pa.C.S.A. § 5712(a).[3]  Nowhere in this section is prior approval by the District Attorney required before the court order is entered.  Additionally, we read Section 5721.1(b)(3)'s language regarding an order that is "materially insufficient on its face" to refer to the requisite contents of the court order authorizing the interception.

Moreover, Section 5721.1(b)(6) specifically provides that, if the interception was made pursuant to 5704(2)(iv) within the nonconsenting party's home, the only bases for exclusion are if "the interception was made "without prior procurement of a court order or without probable cause."

_____

[3] The remaining subsections involve time limits, responsibility for supervision, progress reports, a final report, assistance from the communication service, and entry of the premises by law enforcement officers.  *See* 18 Pa.C.S.A. 5712(b)-(e).  Although Shreffler asserts that the wiretap documents did not include a final report, he concedes that "this failure would not affect the issue of suppression, the failure of Trial counsel to pursue this matter bolsters [Shreffler's] claims his Trial counsel was ineffective in not properly scrutinizing the paperwork [he] was provided."  Shreffler's Brief at 36.  Sections 5713(a) and 5713.1(b) relate to emergency situations which are not relevant to this appeal.

In this case, the PCRA court found that the interceptions at issue in this case were supported by sufficient probable cause and a proper court order. The PCRA court referred to its prior findings following its original hearing on Shreffler's omnibus motion in 2018:

> After review of the testimony and relevant evidence at [the] hearing held [on] January 5, 2017, the court is satisfied that the one-party consensual and in-home communications, at issue here, were intercepted in accordance with the guidelines and requirements set forth in 18 Pa.C.S. §5704(ii) & (iv). Detective [Craig] Snyder testified that [Shreffler] was suspected of criminal activity pursuant to Section 5708. The District Attorney met with the [CI] who provided consent to the interception. The District Attorney reviewed the facts and interviewed the [CI] to ensure that the [CI's] consent was voluntary. Upon conclusion of this interview, the District Attorney gave approval for the interception and acted pursuant to the record keeping responsibilities.
>
> Furthermore, Detective Snyder testified that he petitioned the court for an order under 18 Pa.C.S. [§] 5704(2)(iv), allowing for an oral interception in [Shreffler's] home. Detective Snyder provided the court with an affidavit of probable cause based upon a controlled buy that occurred with [Shreffler] at [Shreffler's] home in March of 2016. This court authorized the in-home interception upon a finding that the requisite level of probable cause was established therein.

PCRA Court Order, 12/5/23 at 5-6 (excess capitalization omitted).

Our review of the record supports the PCRA court's conclusion that "the Commonwealth met the requirements of the Wiretap Act and the Pennsylvania Constitution." *Id.* at 6. We agree with the Commonwealth's assertion that "with regard to the role of the District Attorney, the [Wiretap] Act does not require a Memorandum of Approval form, and is silent on any requirement that such a form contain a time of execution." Commonwealth's Brief at 12.

- 13 -

Section 5704(2)(ii) "only requires the District Attorney to review the facts, be satisfied that the consent is voluntary and give prior approval to the interception." *Id.* at 12-13.

Stated differently, while prior approval from the District Attorney is required for the interception whenever one of the parties has given consent, Section 5704(2)(ii), when a court order is required under Section 5704(2)(iv), approval from the District Attorney is only required prior to the actual interception, not the court order. Therefore, because Shreffler has failed to establish that approval from the District Attorney was needed prior to the court order authorizing the interception, his first issue fails.

In his second issue, Shreffler asserts that trial counsel was ineffective by allowing the partial audio transcripts of the CI's in-home recordings to be given to the jury during deliberations. To properly dispose of this claim, a summary of how and when the transcripts were given to the jury is necessary.

After the jury retired to deliberate, at 6:18 p.m., the jury came back with the following request: "can we have a transcript of the audio recordings from controlled buys," to which the trial court responded negatively. *See* N.T., 3/21/17, 297-99.[4] At 8:15 p.m., the jury returned with two new questions: "what happens if we are not unanimous on two of the four charges," and "can we have the definition of reasonable doubt." *See id.* at

---

[4] The jury also requested the "fill date" of Shreffler's prescription bottle for Buprenorphine. The court denied this request.

299. The trial court informed the parties that it would tell the jury to keep deliberating and would bring them back to the courtroom to read the definitions of presumption of innocence, burden of proof, and reasonable doubt.

At that time, the trial court also informed the parties that it was not previously aware that a transcript of the partial audio recordings had been given to the court stenographer. After further discussion, including input from Shreffler himself, the jury reentered the courtroom. The court read to the jury the definition of presumption of innocence, the burden of proof and reasonable doubt. The court then informed the jury that the court and counsel revisited the jury's prior request for a transcript of the audio recordings and that the court would give a copy to the tipstaff so that the jury could review it during their deliberations. *Id.* at 312. The jury then left the courtroom to continue their deliberations at 8:32 p.m. At 9:04 p.m., the jury returned to the courtroom after reaching the guilty verdicts.

Regarding this procedure, Shreffler contends that trial counsel was ineffective for failing to object to the partial transcripts to be given to the jury when they were never introduced as trial exhibits. Additionally, Shreffler contends that when the transcripts went to the jury, trial counsel should have requested a limiting instruction on how they were to be considered.

Here, the PCRA court found no merit to Shreffler's claim:

[The PCRA court's] interpretation of [Rule 646] is that the court has the discretion to send items to the jury. The transcript in question that was sent to the jury in the present case was not

a transcript that would fall into any of the [prohibited] categories. The transcript was that of a conversation between [Shreffler] and another individual [to] whom he sold the controlled substances. These were transcripts of audio recordings. These transcripts were not that of a confession, nor were they transcripts of testimony from trial. [The PCRA court] believes that it was within its rights to send these transcripts to the jury for their deliberations.

PCRA Court Opinion, 12/5/23, at 8-9 (excess capitalization omitted).

The court analogized the case to our Supreme Court's decision in **Commonwealth v. Hall**, 565 A.2d 144 (Pa. 1989), in which the defendant argued that "the practice of allowing written and taped recorded statements to go out with the jury during its deliberations in general, could be used to circumvent the rule's prohibition against trial transcripts by unscrupulous individuals who could manufacture such evidence specifically for trial." **Id.** at 148. While the high court noted the defendant "point[ed] out an obvious hazard of the rule," our Supreme Court found no evidence of record to support such a finding in the case before it, and, therefore, found that the trial court did not abuse its discretion in permitting the written and tape-recorded statements to go to the jury. **Id.**

We agree with Shreffler that this underlying claim is of arguable merit and meets prong one of the ineffectiveness test. **Sandusky**, **supra**. At the PCRA hearing, trial counsel testified about his concern that giving the jury the transcript without a second request ran the danger of overemphasizing them. Nonetheless, he testified that, ultimately, he did not object because the jury had already observed the transcripts when they were displayed on the screen

- 16 -

during trial. ***See*** N.T., 7/26/23, at 59-60. As explained below, even though the jury had seen these transcripts during the Commonwealth's presentation of its case, trial counsel lacked a reasonable basis for not objecting to the manner in which the transcripts were given to the jury.

Rule 646 of the Pennsylvania Rules of Criminal Procedure governs the materials permitted to be in possession of the jury. The rule reads, in pertinent part, as follows:

(A)   Upon retiring, the jury may take such exhibits as the trial judge deems proper, except as provided in paragraph (C).

***

(C)   During deliberations, the jury shall not be permitted to have:

   (1)   a transcript of any trial testimony.

   (2)   a copy of any written or otherwise recorded confession by the defendant[.]

Pa.R.Crim.P. 646.

To determine whether counsel was ineffective for failing to object under this rule, we turn to our Supreme Court's decision in ***Commonwealth v. Bango***, 742 A.2d 1070 (Pa. 1999). There, the appellant was charged with making twenty-eight drug sales to various persons, which were secretly recorded:

The crux of the prosecution's case against appellant consisted of fifty-three tape-recorded conversations that took place between appellant and approximately seventeen different people. Unbeknownst to appellant, the police had placed a court-authorized wiretap on two telephones in the bar where he worked

- 17 -

and had secretly recorded his telephone conversations pertaining
to the potential sale or trade of controlled substances.

*Bango*, 742 A.2d at 1071 (footnote omitted). At trial, the prosecution played each of the fifty-three tape-recorded conversation and distributed previously-prepared transcripts of the tapes to each juror to assist them in following the conversations. *Id.* In addition, the state trooper, who had had prepared that transcript for each conversation, identified the voices heard, and the date and time of each tape. Moreover, after each of the tapes were played, that state trooper testified as to the substance of the conversation that the jury had just heard. *Id.* Prior to resting, the prosecution moved for the admission of the transcripts of the tapes as exhibits, and the trial court granted the request over defense counsel's objection.

Following closing arguments and the trial court's final charge, the jury began its deliberations. After approximately two hours, the jury asked to review the fifty-three tape recordings and their corresponding transcripts. Over defense counsel's objection, the trial court allowed the transcripts to go out with the jury with the following instruction:

> Again, and this is really important and I want to really stress this to you, in deliberations those transcripts are not the evidence. The evidence is the tapes and so that is what you should rely on and not the transcripts but I will send the transcripts out with you to help you identify what tape it is that you are looking for and listening to and guide you somewhat as to what you are hearing but again I can't stress this strongly enough that the tapes themselves and what is on those tapes is the evidence that you should consider.

*Bango*, 742 A.2d at 1072 (citation omitted). The jury reached a verdict, finding the appellant guilty of twenty-three counts, approximately twenty minutes after the trial court granted the jury's request to review the tape recordings and their corresponding transcripts. *Id.*

After being sentenced, appellant filed an appeal, this Court affirmed his judgment of sentence, and our Supreme Court granted "allocatur to determine whether the trial court abused its discretion in allowing the jury to review the transcripts of the tape-recorded conversations during its deliberations." *Id.* The high court first cited Rule 1114 of the Pennsylvania Rules of Criminal Procedure, which was later renumbered as Rule 646, *supra*, and noted that transcripts at issue did not fall into any of the categories of items specifically prohibited either by the procedural rule or by case law. *Id.* Thus, our Supreme Court next determined whether the trial court abused its discretion by permitting the jury to review the transcripts in conjunction with the tapes during deliberations.

The Supreme Court majority then described how it would determine if an abuse of discretion occurred, and concluded that, under the factual circumstances before it, an abuse of discretion did not occur:

> We will deem a trial court to have abused its discretion only if we determine that the trial court's ruling exhibited manifest unreasonableness, partiality, prejudice, bias or such lack of support as to render it clearly erroneous. We will not condemn a trial court's ruling as an abuse of discretion merely because we might have reached a different conclusion had the decision been ours in the first instance.

Here, in light of the meticulous care taken by the trial court to ensure that the jury understood that the transcripts were to be used only as guideposts and not as verbatim translations, we cannot characterize the trial court's decision to permit the jury to use the transcripts as manifestly unreasonable.

*Bango*, 742 A.3d at 1072-73 (citation omitted).

In his dissent, Justice Nigro, joined by Justice Zappala, opined that he viewed the tape transcripts provided to the jury to be "tantamount to transcripts of trial testimony, which juries are never permitted to take with them during their deliberations[.]" *Bango*, 742 A.2d at 1075, n.2 (Nigro, J. dissenting). Justice Nigro further stated:

In the instant case, the majority concludes that the trial court did not abuse its discretion by permitting the transcripts to go out with the jury during its deliberations because the trial court gave cautionary instructions to the jury concerning the limited purpose for which it could use the transcripts. However, the prejudicial effect of the transcripts in the instant case is not grounded in the failure of the trial court to adequately instruct the jury as to the limited purpose(s) for which it could use them. Rather, the prejudicial effect of the transcripts is grounded in the opportunity for the jury to place undue emphasis on the contents of the transcripts, and in the danger that the availability of the transcripts in its deliberations will prompt the jury to abandon its responsibility to rely on its collective recollection of the evidence and testimony presented during the trial.

Therefore, I agree with [appellant] that the procedural safeguards that were presented in the instant case did not, and could not, ameliorate the prejudicial effect of the jury's opportunity to review the transcripts during its deliberations. In addition, I believe that the dangers to the deliberative process that are created when a trial court permits a jury to review transcripts of tape-recorded conversations during its deliberations outweigh any potential probative value that the transcripts may have.

*Id.* at 1075 (Nigro, J. dissenting).

Shreffler relies on Justice Nigro's dissent in arguing he was prejudiced by the manner in which the audio transcripts were given to the jury during its deliberations. We note that Justice Nigro's dissent is not controlling precedent. Nonetheless, as we discuss below, we agree with Shreffler his case can be distinguished from **Bango**, given the complete lack of "procedural safeguards" prior to the jury receiving the audio transcripts in this case.

Initially we note that, although the transcripts could be considered a trial aid, they were neither marked as an exhibit nor admitted into evidence. **See Commonwealth v. Strong**, 836 A.2d 884, 887 (Pa. 2003) (holding that it was error to submit a diagram to the jury because "it was not offered as an exhibit, counsel for appellant was not asked or obliged to offer objections, and no ruling on the admissibility was ever made"). In **Strong**, our Supreme Court, citing prior case law, determined that not every violation of Rule 646 is *per se* prejudicial. **Id.** The high court concluded that submission of the diagram—which was to be viewed only temporarily by the jury and not left in the jury room—was harmless given the overwhelming evidence of the appellant's guilt. **See id.** (explaining "[t]he diagram had little value in undermining the multiple eyewitness identifications that it was appellant who shot into the car").

Here, the fact that the transcripts of the audio recordings were not marked as an exhibit or admitted into evidence is of little significance. Rather, it was the manner in which the trial court gave the transcripts to the jury that caused prejudice to Shreffler, namely, without a renewed request by the jury

- 21 -

to receive them, and without any guideline or limiting instruction on how to use them. Unlike in **Bango**, where the trial court took "meticulous care" in instructing the jury on the limited purpose of the transcripts and the tapes which accompanied them, here, no such limiting instruction was given. Additionally, in Shreffler's trial the audio recordings were not given to the jury along with the transcripts.

Finally, the trial court's reliance on our Supreme Court's decision in **Hall**, **supra**, is unpersuasive. The **Hall** decision predates the high court's **Bango** decision, and **Hall** provides no analysis regarding the manner in which the transcripts were given to the jury. (In fact, the language from **Hall** cited above represents the high court's entire consideration and disposition of the issue.)

Under the facts before us, we conclude that the trial court abused its discretion in *sua sponte* giving the jury the audio transcripts without the audio recordings and a limiting instruction on their use. Shreffler was prejudiced by the admission of the transcripts in this fashion. His trial counsel should have objected. Counsel did not offer any reasonable basis for his failure to object. Thus, prong two of the ineffectiveness test is satisfied. Finally, Shreffler also meets prong three of the ineffectiveness test because but for counsel's failure to object there is a reasonable probability that the outcome of the proceeding would have been different. The jury was deadlocked at 8:15 p.m. before requesting the definition of reasonable doubt. The trial court then *sua sponte*

provided the transcripts at 8:32 p.m. Only approximately a half hour later the jury reached its verdict.

In sum, we find Shreffler met all three prongs of the ineffectiveness test and is therefore entitled to a new trial. Given this conclusion, we need not address Shreffler's remaining issues.

Order reversed. Judgment of sentence vacated. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/13/2024